GIRARD TRUST BANK, Appellant, v. GOTHAM FOOTBALL CLUB, INC., Respondent.

First Department, December 12, 1968.

*J. August Gerber* for appellant.

*Eli D. Schoenfield* of counsel (*Barovick & Konecky*, attorneys), for respondent.

RABIN, J. In this turnover proceeding the petitioner-appellant Girard Trust Bank (hereinafter called Girard) seeks to enforce a money judgment which it had obtained against the judgment debtor, John Sample, Jr. (hereinafter called Sample), an employee of the respondent-respondent Gotham Football Club, Inc. (hereinafter called Gotham), the owner of the Jets Football Team.

John Sample was, and is, employed by Gotham. His salary for the 1967 season (which ran from July 20, 1967 to December

24, 1967) was $20,000. In addition to his salary, his contract made provision for possible various bonuses.

Two of such bonuses are involved on this appeal. One of them provides for his receiving $2,000 " if he is a member of the Jets, and he plays in 50% of the offensive and/or defensive plays " during the entire season. The second was a merit bonus of $1,000 which he was to receive if the coaches determine that the " said player maintains a positive attitude for the best interest of our football team and professional football and his overall performance for the season was outstanding." The last game of the season was played on December 24, 1967. Accordingly, whether he was to receive the bonuses was not determinable and, in fact, was not determined until after that date. Thereafter, the club did decide that the player was entitled to the two bonuses — a total of $3,000.

As indicated, Girard obtained a judgment against Sample in the amount of $4,291. After obtaining this judgment, Girard served Gotham with a restraining notice to prevent it from paying any part of the $3,000 to the judgment debtor. That notice was dated December 18, 1967. However, Girard placed no reliance on this notice since, as of that date, there was no money due to Sample by way of bonuses — no determination having been made with respect to whether he was entitled to those bonuses. (CPLR 5222.) Subsequently, Gotham was served with two executions at the instance of Girard. The first, dated January 18, 1968 was an income execution against Sample's salary, pursuant to CPLR 5231, and the second, dated February 1, 1968, was an execution directed against the personal property of the debtor, pursuant to CPLR 5230.

Thereafter, the petitioner brought this proceeding for an order directing Gotham to pay over to it the money owed to Sample. However, the court refused to issue such an order. It found that another judgment creditor (Avis-Rent-A-Car, Inc.) had a judgment against Sample in the sum of approximately $362, and had served an income execution on Gotham before any of Girard's executions had been served and, consequently, had priority. It is to be noted that there is no exception concerning the priority of the Avis income execution.

After holding that the bonuses represented earnings for services rendered during the 60-day period prior to the service of the executions, and thus were exempt from enforcement of a money judgment to the extent of 90% (CPLR 5205, subd. [e], par. 2), the court directed that 10% of the $3,000 bonus money be paid to Avis. Since the court found that 90% of the funds were

exempt, it held that the $300 allowed to Avis exhausted the fund permissible for application to the executions, and it directed that the balance of the fund be paid over to Sample, less, of course, the appropriate withholding taxes.

From this order Girard appeals. Its major contention is that the bonus money was not all earned within the 60 days prior to the service of either the income execution or the property execution and that, therefore, the 90% exemption does not apply.

Girard, in effect, contends that the moneys were earned for services rendered over the period of the entire season and to the extent that the moneys represented compensation for services rendered prior to 60 days of the delivery of the execution to the Sheriff, they were subject to execution without limitation. (See *Hayward* v. *Hayward*, 178 App. Div. 92, which permits an execution against earnings past due.)

We note, at this point, that it is clear that the bonuses were paid for services rendered and are to be treated in the same manner as wages or earnings. (*Gutterson* v. *Gutterson*, 263 App. Div. 923.)

Pertinent to the issues to be resolved are CPLR 5201, 5205, 5230 and 5231. CPLR 5201 provides generally that a money judgment may be enforced against any debt which is past due or which is yet to become due, with certainty or upon demand of the judgment debtor. It further provides that a money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest, or whether or not it is vested. However, CPLR 5201 does not permit of enforcement where the property or debt " is exempt from application to the satisfaction of the judgment." Such exemptions are provided in CPLR 5205, which is entitled " Personal property exempt from application to the satisfaction of money judgments." Subdivision (e) thereof provides that " the following personal property is exempt from application to the satisfaction of a money judgment, except such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his dependents: * * * 2. ninety per cent of the earnings of the judgment debtor for his personal services rendered within sixty days before, and at any date after, an income execution is delivered to the sheriff or a motion is made to secure the application of the judgment debtor's earnings to the satisfaction of the judgment ".

CPLR 5230 provides for executions generally, while CPLR 5231 governs income executions. The latter provides that where a judgment debtor is receiving, or will receive more than $30 per

week from any person, an income execution for installments therefrom of not more than 10% thereof may be issued.

If we were dealing only with income executions there would be no problem, since the Avis execution fully exhausted the allowable 10% (CPLR 5231, subd. [h]), leaving recourse for additional application only under an installment payment order. (CPLR 5226. See Siegel, Practice Commentary, McKinney's Cons. Laws of N. Y., Book 7B, CPLR 5226.)

However, Girard relies not only on the execution served against income, but also on the personal property execution (CPLR 5230). Without doubt, under that execution the judgment creditor would be entitled to all moneys in the hands of Gotham for services rendered outside of the 60-day exemption period. While Girard seems to raise the further question as to whether under such execution, earnings which are past due may be seized without regard to the exemption period, it apparently concedes that the execution on personal property is nevertheless limited by the income exemption provisions in CPLR 5205 (subd. [e], par. 2). Were this not conceded we would nevertheless so hold.

It is clear beyond any doubt that so long as the money sought to be reached does constitute earnings for personal services, the statutory scheme of exempting 90% of income cannot be thwarted by simply serving an execution against personal property. Such earnings are not subject to full execution, but are limited by exemptions in CPLR 5205 (subd. [e]). In other words, CPLR 5230 must be read together with CPLR 5231 and 5205 — otherwise the exemption provision on income already accrued would be meaningless.

However, as indicated and contrary to the finding of Special Term, Girard seems to assert that the bonuses were not entirely earnings of the judgment debtor for his personal services rendered within 60 days before the execution was delivered to the Sheriff, but were earned for services rendered over the entire season. We agree with that position as respects the second bonus, but as to when the services were rendered with respect to the first bonus will depend on factual data not now before us. There seems to be some confusion with respect to the application of the exemption statutes by placing too much stress on when the money was earned or deemed earned. The exemption provision refers, not to when the money was earned, or declared earned, but rather to the time when the debtor *performed the services* for which the earnings accrued. Consequently we must determine when the services of Sample were rendered, for which the bonuses were

given. If they were not all rendered during the exempted period, Girard would be entitled to recover under its execution to the extent that the services were rendered outside that period.

As indicated, one bonus was given for participation in 50% of the offensive and/or defensive plays, and the other, a merit bonus, if the coaches determine that the player maintained a positive attitude for the best interests of the team and if his over-all performance for the season was outstanding.

By the very nature of the second bonus it can only be for services rendered throughout the season. As to the first bonus, the number of plays and the percentage of Sample's participation, of course, could not be determined until after the last game of the season, to wit: December 24, 1967. Only after the figures were in could it be determined when the player in fact became entitled to that bonus. Therefore, in order to determine whether or not the services entitling him to this bonus were rendered within or without the exemption period, we must know the dates on which he was engaged in the defensive and/or offensive plays, and also the date of the last play that completed the required 50%. If that date falls outside of the 60-day exemption period contemplated by CPLR 5205, then the entire $2,000 bonus would be subject to execution. If the date falls within the 60-day exemption period, then the amount should be prorated, based upon the percentage of plays completed before and after the 60 days. However, from this record we cannot determine on what day the 60-day exemption period commenced and, consequently, on what day it ended. We, therefore cannot make a proper allocation.

With respect to the second bonus, it is quite clear that it was for services rendered over the entire season, and that bonus must be prorated over that period. That part which was for services rendered during the 60 days should be exempt.

Under CPLR 5205, the period of exemption is dependent upon the date when the execution was delivered to the Sheriff, rather than upon the date it was served on the garnishee. That date does not appear on the record and must be determined upon remand. The period of exemption is pertinent, despite Girard's reliance on the property execution, because as we have held, CPLR 5230 must be read together with CPLR 5205 and the other CPLR provisions covering executions against money earned for services rendered.

Accordingly, the order appealed from should be modified on the law and on the facts to the extent of reversing (1) that portion of the order which exempts the earnings of the judgment debtor after the payment to Avis-Rent-A-Car, (2) that portion of the order which directs the payment to the judgment debtor, and the

matter should be remanded to Special Term for further proceedings in accordance with this opinion, and as so modified the order should be affirmed, without costs or disbursements to either party.

STEVENS, J. P., STEUER, TILZER and McNALLY, JJ., concur.

Order entered July 5, 1968, unanimously modified, on the law and on the facts to the extent of reversing (1) that portion of the order which exempts the earnings of the judgment debtor after the payment to Avis-Rent-A-Car; (2) that portion of the order which directs the payment to the judgment debtor, and the matter is remanded to Special Term for further proceedings in accordance with the opinion of this court filed herein, and as so modified the order is affirmed, without costs or disbursements to either party.